DWAYNE THOMAS, et al., individually )
and on behalf of others similarly )
situated, )
     )
               Plaintiffs, )
     )
               vs. )       No. 04 C 4865
     )
MICHAEL SHEAHAN, the Sheriff of )
Cook County, COUNTY OF COOK, )
COOK COUNTY SHERIFF'S )
DEPUTIES MACKOWIAK (star #2846), )
KOZLAR (star # 4948), and QUALITY )
MAINTENANCE & HANDLING CO., )
     )
               Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dwayne Thomas brought this action against defendants County of Cook (Cook County); its sheriff, Michael Sheahan, in his official capacity; two of the sheriff's deputies, Mackowiak and Kozlar, in their individual capacities; and Quality Maintenance & Handling Co. (Quality Maintenance). The complaint arises from the deputies' eviction of plaintiff and his two sons pursuant to a court order. In plaintiff's second amended complaint[1] he alleges two section 1983 claims against Sheahan and Cook County (named as a defendant for indemnification purposes only), for violation of the Fourth Amendment (Counts I and II). He alleges Count II against the sheriff's deputies, Mackowiak and Kozlar, as well. Counts III, IV, and V are state law claims against Quality Maintenance for conversion of personal property,

---

[1] Plaintiff filed a third amended complaint subsequent to briefing on the motions before us. The only change of note between the second and third amended complaints is that the defendant, formerly identified as Quality Movers, Inc., is now referred to in the title and body of the complaint as Quality Maintenance & Handling Co.

detinue, and negligent supervision, respectively. Cook County, Sheahan, Mackowiak and Kozlar (hereinafter defendants) now move for denial of class certification and dismissal of Counts I and II. Their motion is granted in part and denied in part.

## BACKGROUND

The following facts, taken from plaintiff's amended complaint, are, for purposes of this motion, accepted as true. On July 31, 2003, plaintiff observed two Cook County sheriff's deputies, later identified as defendants Mackowiak and Kozlar, approaching his house with a battering ram. Plaintiff opened the door and asked the deputies why they were there. The deputies told him that he was behind on his mortgage, and proceeded to enter the house, pushing plaintiff to the side. Upon inquiring if anyone else was in the house, the deputies were told that plaintiff's two sons, ages eleven and fifteen, were sleeping in their bedroom. Despite plaintiff's protests, one of the officers entered the boys' bedroom with his gun drawn and ordered the boys to "get up and get dressed." He then made all three of the occupants leave the house, without gathering any personal belongings.

The deputies allegedly told plaintiff and his sons to sit in their van and not to move, or else they would be arrested. Several employees of Quality Maintenance then entered plaintiff's house and ransacked it. Though the movers brought many of plaintiff's possessions outside, they left pieces of large furniture and other items inside. While the movers emptied the house of plaintiff's possessions, they repeatedly returned to their vehicle, leading plaintiff to suspect that they were stealing some of his possessions. Plaintiff voiced his suspicions to the deputies and asked them to watch the movers, but, instead, the deputies kept watch over plaintiff and his sons.

When plaintiff was able to re-enter his home he found that pockets on his family's

clothing had been turned inside out and he believed that his briefcases had been opened. Plaintiff discovered that watches, jewelry, CD's, printer cartridges, and a $300 money order were missing. He was not able to remove the items that the movers left in the house before it was boarded shut. Plaintiff contacted Diamond Realtors[2] to inquire about his remaining belongings. He was told that he could go to the house during the next two weeks to pick up his items. However, when he returned ten days later, the house was empty. He alleges that the items left in the house were worth about $5,000. Plaintiff filed his first complaint on July 23, 2004. Subsequent amended complaints added class action allegations.

## DISCUSSION

Defendants argue that the court should deny class certification pursuant to Federal Rule of Civil Procedure 23, and dismiss Counts I and II in light of Rules 12(b)(1) and 12(b)(6). First we address the issue of dismissal. Rule 12(b)(1) allows for dismissal when the court lacks subject matter jurisdiction, while Rule 12(b)(6) allows for dismissal when the plaintiff fails to state a claim upon which relief can be granted. The standard of review for Rule 12(b)(1) motions depends on whether the motion challenges the sufficiency of the subject-matter-jurisdiction allegations or challenges the truth of the jurisdictional allegations. *See* United Transportation Union v. Gateway Western Railroad Co., 78 F.3d 1208, 1210 (7th Cir. 1996); Shoulders v. Sheahan, 2001 WL 1617216 at *1 (N.D.Ill. 2001). Where the challenge is to the sufficiency of the allegations, not a denial of their truth, the court accepts plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in his favor. Shoulders, 2001 1617216 at *1. A challenge to the truth of the allegations allows the court to look outside

---

[2] Though the complaint does not specify, we assume Diamond Realtors took possession of the realty, or took over management of the property for the owner.

the complaint and consider evidence which disputes the basis of subject matter jurisdiction. United Transportation Union, 78 F.3d at 1210. Defendants' challenge is to the sufficiency of the allegations establishing jurisdiction, thus the court grants the same deference to the complaint when considering the 12(b)(1) and 12(b)(6) motions. A 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case, Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989), and the court assumes the truth of all well-pleaded allegations, making all inferences in plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Defendants argue that the court lacks subject matter jurisdiction because plaintiff's claims against Sheahan and the sheriff's deputies are barred by the Eleventh Amendment.[3] The Eleventh Amendment bars suits against a state or its agencies unless the state allows the federal suit, or Congress uses its Fourteenth Amendment powers to abrogate the state's immunity. See Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir. 1992). A suit against a state officer in his official capacity is a suit against the state and is therefore barred by the Eleventh Amendment. Id. We need not determine whether the sheriff's deputies are state officials in order to weigh defendants' argument that they are entitled to Eleventh Amendment immunity, because they were not sued in their official capacity. The Eleventh Amendment does not bar a claim brought against state officials in their individual capacities. Hafer v. Melo, 502 U.S. 21, 27-28 (1991). In Hafer, the Supreme Court found that the difference between an official-

---

[3] Cook County is named as a defendant for indemnification purposes only. Therefore its liability is wholly dependent on a finding of liability against the sheriff. See Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

capacity and an individual-capacity suit rests not on the capacity in which the defendant acted when injuring the plaintiff, but on the capacity in which the defendant is sued. *Id.* Given that the sheriff's deputies were sued in their individual capacities, and any liability for damages on their part would not be paid from public coffers, they are not entitled to Eleventh Amendment immunity.

In contrast, Sheriff Sheahan is sued in his official capacity. In order for Eleventh Amendment immunity to apply to the sheriff, he must be a state official. In Scott, the court addressed whether a county sheriff is a state official when executing an order issued by the Cook County courts. 975 F.2d at 369. The court analyzed how state law categorized the sheriff and the degree of state control over the sheriff's actions. *Id.* at 370-71. Though Illinois law classifies county sheriffs as county employees, and they are paid by the county, the court found that when the sheriff is compelled by Illinois law to perform an activity, he acts as an arm of the state judicial system and is a state official for purposes of the Eleventh Amendment. *Id.* at 371; Whitney v. Cook County Sheriff's Dept., 1993 WL 389341 at *2 (N.D.Ill. 1993). County sheriffs do not have discretion in executing a state court order, such as an order for eviction, and they can be held in contempt of court for failure to execute the order. *See* 55 ILCS 5/3-6019; 735 ILCS 5/15-1102. Thus, when executing a state court order for eviction, a county sheriff acts pursuant to state control and enjoys Eleventh Amendment immunity.

However, this does not mean that any action taken by the sheriff or his deputies related to the execution of a state court order is protected by Eleventh Amendment immunity. *See* Richman v. Sheahan, 270 F.3d 430, 439 (7th Cir. 2001); Ruehman v. Sheahan, 34 F.3d 525, 529 (7th Cir. 1994)(holding that although the state requires the defendant sheriff to execute warrants, the state does not control the procedures by which the sheriff tracks warrants, thus

the sheriff was not acting as a state agent entitled to Eleventh Amendment immunity when designing and supervising his warrant-tracking system); Stewart v. Rouse, 1999 WL 102774 at *6 (N.D.Ill. 1999)(finding that the Eleventh Amendment protects county officials from official-capacity suits based on the execution of state functions or duties, but not from suits based on any action taken by the official in connection with the execution of those duties). In Richman, the plaintiff's son died after sheriff's deputies, acting on a judge's order, restrained him in a county courthouse. 270 F.3d at 433. Plaintiff sued Sheriff Sheahan in his official capacity and the sheriff's deputies in their individual capacities. *Id.* In her claim against the sheriff, the plaintiff alleged that the sheriff's department had an unconstitutional policy regarding the use of force when restraining someone pursuant to a judge's order. *Id.* at 440. The defendants argued that the sheriff was immune to suit under the Eleventh Amendment because he was acting as an arm of the state in providing security for Illinois courtrooms. *Id.* Furthermore, he had no discretion in whether to obey judges' orders. *Id.*

The court drew a distinction between a challenge to "the mere execution of the court's order by the sheriff's office" and "training or supervision of deputies in the use of force when executing court orders." *Id.* The court could find no evidence that the state directed the sheriff in its training or supervision of deputies, and therefore could not conclude as a matter of law that the alleged unconstitutional policy represented state policy. *Id.* Likewise, in Stewart, Judge Pallmeyer denied Eleventh Amendment immunity for the Will County sheriff in a case involving the execution of an arrest warrant, stating that "[i]f [plaintiff] were complaining solely of the fact of her arrest, for example, if she claimed the arrest was improper because the arrest warrant was defective, her case might fall within the ambit of *Scott*. Because she complains of the way in which Rouse arrested her, the Eleventh Amendment does

not preclude liability for the Sheriff of Will County." Stewart, 1999 WL 102774 at *7.

As with the claims in Richman and Stewart, plaintiff's claims against the sheriff in Counts I and II allege constitutional violations related not to the execution of the state order itself, but to the manner in which the order was executed. In Count I, plaintiff alleges that the sheriff has a policy of detaining evictees and conducting searches of their premises without reasonable suspicion or probable cause. In Count II, plaintiff alleges that the sheriff has a policy of tolerating the misappropriation of property during evictions. Based on the allegations of the complaint we have no reason to believe that the state exercises any control over the sheriff's policies regarding the manner in which eviction orders are enforced. Thus, even though the Cook County sheriff's deputies act as state agents when executing eviction orders, Sheahan is not immune from claims arising from policies concerning the implementation of those orders.

As the Eleventh Amendment does not bar plaintiff from bringing Counts I and II, we must now determine whether he has stated a claim against defendants. Plaintiff brings Count I for violation of 42 U.S.C. § 1983 against Sheriff Sheahan in his official capacity and against Cook County as a necessary indemnifying party. As explained above, given the allegations of the complaint, the claim against Sheahan concerns actions he took in his capacity as a county employee, not a state actor. Therefore, Count I against the sheriff in his official capacity is a Monell claim, see Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), and is the same as a suit against the Cook County sheriff's department. See Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999); Cady v. Sheahan, 2003 WL 288472 at *3 (N.D.Ill. 2003). To state a § 1983 claim against a governmental entity, plaintiff must allege "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a

widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995)(quoting Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 734-35 (7th Cir. 1994))(*internal quotations omitted*). When alleging a Monell claim, plaintiff need not satisfy a heightened pleading standard – notice pleading suffices. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Plaintiff asserts that the Cook County sheriff's department has a policy of detaining people who are being evicted and of searching their homes without probable cause or reasonable suspicion. Plaintiff alleges that as a result of these policies his Fourth Amendment rights were violated.

Defendants contend that plaintiff has failed to plead a constitutional violation. Relying on Soldal v. Cook County, Ill., 506 U.S. 56, 71 (1992)[4], they argue that the deputies' actions were reasonable in light of the valid eviction order. In Soldal, the plaintiffs brought suit after sheriff's deputies participated in an eviction, knowing there was no eviction order. *Id.* at 58-59. The Supreme Court found that the Fourth Amendment was implicated, but allayed concerns that this would cause a deluge of cases in the courts by noting that it would be a "laborious task" to show an unreasonable seizure of property when deputies are acting pursuant to a court-ordered eviction. *Id.* at 71. Citing to this language, defendants contend

---

[4] The court does not understand defendants' attempt to draw a distinction between Soldal's reasonableness test and traditional Fourth Amendment analysis ("Whether the court employs a reasonableness test or traditional Fourth Amendment analysis . . . ."). In Soldal, the court makes clear that Fourth Amendment protection applies not only during law enforcement activities, but also during "a search or other entry into the home incident to an eviction or repossession." Soldal, 506 U.S. at 67. Whether criminal activities or evictions are at issue, "reasonableness is still the ultimate standard under the Fourth Amendment." *Id.* at 71 (*citation omitted*).

that plaintiff's claims ignore the effect of the unchallenged eviction order. However, the eviction order does not render constitutional any action taken by the deputies in association with the eviction. In <u>Soldal</u>, the issue was the seizure of property without an eviction order. Thus it follows that the constitutionality of the action turned on the existence of a valid eviction order. In this case, plaintiff is not challenging the seizure of property pursuant to the eviction order, he is challenging his alleged detainment and the search of his home. The eviction order does not render those acts automatically reasonable. *See* <u>Hanno v. Sheahan</u>, 2004 WL 2967442 at *8 (N.D.Ill. 2004)("Defendant has suggested that the presence of the eviction order alone gave the police the right to detain Plaintiffs, but this court concludes that the presence of an eviction order does not end the Fourth Amendment reasonableness inquiry. The Fourth Amendment requires police to make some individualized showing of probable cause or reasonable suspicion prior to a seizure."). Thus, despite the court order, plaintiff still could have suffered a violation of his constitutional rights during the eviction. Nonetheless, defendants contend that the complaint alleges neither an unreasonable seizure nor an unreasonable search.

Defendants assert that plaintiff's complaint fails to allege that he was seized at all by the sheriff's deputies. To determine whether a person has been seized within the meaning of the Fourth Amendment, the court looks to whether "a reasonable person would have believed he was not free to leave." <u>U.S. v. Mendenhall</u>, 446 U.S. 544, 554 (1980). Circumstances that the court considers in making that determination include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* Defendants argue that the circumstances alleged in the

complaint could not have led plaintiff to reasonably believe that he and his sons were not free to leave the premises. We disagree.

In his complaint, plaintiff claims that the sheriff's deputies forced him and his sons outside without allowing them to get any personal belongings, and told them "to sit in their van and to not move." The complaint later states that the deputies kept a close watch on him and "threatened to arrest Plaintiff and his sons if they did not stay inside of the van." Defendants argue that this second statement indicates that plaintiff was free to drive off in the van and therefore was not being detained. Given the totality of the circumstances alleged, we cannot find as a matter of law that no reasonable person would have believed that they were being detained. Though there were only two deputies[5] (accompanied by the movers), and there is no allegation that they physically touched plaintiff, he and his sons were ordered out of the house by the officers, while one of them held an unholstered gun. Once outside they were allegedly told to get in their car and not to move. Contrary to defendants' contentions, those allegations would not lead many to believe that they could drive off. Nor does the allegation that plaintiff was threatened with arrest if he did move or get out of the car, undermine his claim that he was being detained while seated in the vehicle. A reasonable person could believe that he was not free to leave, even though he had not been arrested, as is the case with <u>Terry</u> stops. Nothing in the complaint justifies a finding at this stage that the alleged seizure was reasonable under the Fourth Amendment.

Plaintiff also alleges a <u>Monell</u> claim arising from an unconstitutional search. He offers two separate bases for the unconstitutional search: the sheriff's deputies' protective sweep of

---

[5] Despite defendants' argument limiting the meaning of "several," we note that Webster's New International Dictionary, 2d ed., defines "several" as "[m]ore than one," as well as "an indefinite number more than two."

the house and the movers' search of closed containers and clothing pockets. While allegations of the deputies' protective sweep does support his claim, the mover's alleged search does not.

In <u>Maryland v. Buie</u>, 494 U.S. 325 (1990), the Supreme Court addressed the justification needed for officers to conduct a protective sweep of a home where they are arresting a suspect pursuant to an arrest warrant. The court held that in order to make a sweep of all or part of the premises, the officers need to have "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing, that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327 (*internal citations and quotations omitted*). No less is required when officers are in a home for reasons other than an arrest warrant, such as an eviction order. <u>Soldal</u>, 506 U.S. at 66-67. Defendants' suggestion that a protective sweep is "entirely reasonable" any time deputies execute an eviction order clearly runs counter to <u>Buie</u>, where the court rejected the argument that protective sweeps of a home are always reasonable when making an in-house arrest of a violent criminal. <u>Buie</u>, 494 U.S. at 334 n.2. If such searches are not always reasonable when dealing with violent criminals, they certainly are not when dealing with evictees. Nor do the pleadings provide articulable facts that support a reasonable belief that a dangerous individual was in plaintiff's house. When asked, plaintiff informed the officers that the only individuals in the house were his two young sons who were sleeping. This statement would not have provided a basis for the sweep. Defendants argue that plaintiff attempted to block the doorway, thus giving rise to their suspicions. While they may have evidence to present on this issue when the time comes, the complaint's claim that plaintiff opened the door and was pushed to the side is not an admission that he blocked the deputies' entrance.

While the deputies allegedly conducted the less intrusive "protective sweep," plaintiff maintains that the movers also searched his home, opening closed containers and emptying clothing pockets.[6] This search does not amount to a constitutional violation that gives rise to a <u>Monell</u> claim against Sheriff Sheahan because, as alleged, the search did not take place under the color of law. For a private party's search or seizure to run afoul of the Fourth Amendment, "there must be a sufficiently close nexus between the state and the private conduct so that the action 'may be fairly treated as that of the State itself.'" <u>Wade v. Byles</u>, 83 F.3d 902, 905 (7th Cir. 1996)(quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)). The Seventh Circuit has identified two broad inquiries to determine if private parties engaged in government action: (1) whether the government has directed, controlled, or encouraged the actions of the private party, and (2) whether the state delegated a public function to a private party. *Id.* As for the second inquiry, in <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 157-63 (1978), the Supreme Court determined that the settlement of disputes between debtors and creditors was not an exclusive public function, and therefore warehouse companies who aided marshals in evictions and then threatened to sell evictees' warehoused possessions to satisfy their storage accounts, were not engaged in state action. Thus, the plaintiff's eviction was not an exclusive public function that qualifies the movers as government actors.

Factors relevant to the first inquiry include "whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose in conducting the search was to assist law enforcement agents or to further [his] own ends," and "whether the

---

[6]In his response to defendants' motion to dismiss, plaintiff states that either the sheriff's deputies or the movers searched several closed containers. However, his complaint does not allege that the sheriff's deputies performed such a search. As a response pleading cannot serve to amend the complaint, *see* <u>Perkins v. Silverstein</u>, 939 F.2d 463, 470 n.6 (7th Cir. 1991), we ignore this assertion.

private actor acted at the request of government and whether the government offered the private actor a reward." United States v. Shahid, 117 F.3d 322, 325 (7th Cir. 1997)[7]. While the movers emptied plaintiff's residence of his belongings at the government's behest, there is no allegation that they conducted their search under the government's control, direction, or encouragement. Nor does plaintiff contend that the deputies conspired with the movers in this violation, *see* Gramenos v. Jewel Companies, Inc., 797 F.2d 432 (7th Cir. 1986)(*citing* Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)), or even knew of the mover's search of closed containers and clothing pockets. Rather, plaintiff asserts that the deputies were negligent in their supervision of the movers. Furthermore, the complaint makes clear that the purpose of the movers' alleged search was not to assist the deputies or any other government entity, but was for their own personal ends – to enrich themselves by stealing plaintiff's valuables. As the complaint does not support a finding that the movers conducted their search under the color of law, these actions do not support a claim under Count I.

This leads us to Count II. In that count plaintiff alleges a § 1983 claim against Sheriff Sheahan, as well as the sheriff's deputies Mackowiak and Kozlar. The claims stem from the movers' alleged theft of plaintiff's property. Plaintiff contends that the sheriff's department has a policy of tolerating such theft and that the deputies failed to stop the theft. But, as explained above, to state a § 1983 claim, plaintiff must allege that someone acting under the color of law deprived him of a constitutional or statutory right. Just as the movers' search does not constitute action under color of law, their alleged theft does not constitute

---

[7] Though Shahid concerned a motion to suppress evidence, the court's analysis of whether private parties engaged in state action is equally applicable to § 1983 claims. *See* Payton v. Rush-Presbyterian-St. Luke's Medical Center, 184 F.3d 623, 629 (7th Cir. 1999); Johnson v. LaRabida Children's Hospital & Research Center, 2002 WL 31155045 at *2 (N.D.Ill. 2002)

governmental action.

The deputies, on the other hand, are state actors. Yet, their alleged actions do not constitute a violation of rights protected by § 1983. Whether plaintiff's allegations are construed to assert that the deputies negligently or intentionally allowed the movers to steal his belongings, it is not an actionable constitutional tort claim. "[A]n unintended loss of property resulting from an official's negligence does not implicate the Due Process Clause." Slaughter v. Anderson, 673 F.Supp. 929 (N.D.Ill. 1987)(citing Daniels v. Williams, 474 U.S. 327, 328 (1986)); Brown v. Lange, 1994 WL 30605 at *2 (N.D.Ill. 1994). Nor does an intentional deprivation of property implicate the due process clause as long as there is an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Brown, 1994 WL 30605 at *3; Slaughter, 673 F.Supp. at 930. In Illinois, intentional misconduct by officers is subject to state tort law. 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). Thus, even if plaintiff's complaint is construed to allege that the deputies intentionally – willfully and wantonly – allowed the movers to steal his possessions, his § 1983 claim fails. See Brown, 1994 WL 30605 at *3; Slaughter, 673 F.Supp. at 930. As the officers did not violate rights protected by § 1983, and the movers' alleged theft was not under color of law, there is no constitutional violation that can serve as the basis for plaintiff's Monell claim against the sheriff. Thus, Count II is dismissed.

As for defendants' motion to deny class certification, we agree with plaintiff that the motion is premature. Federal Rule of Civil Procedure 23 requires that class certification be decided as early as practicable, but that does not mean that plaintiff must rest on his pleadings. Defendants proceed to argue against class certification before plaintiff has even moved to

certify the class. Defendants attempt to foreclose any discovery on the issue of class certification, even though "the predominant view is to allow discovery before the motion for certification." Elliott v. ITT Corp., 1992 WL 59102 at *4 (N.D.Ill. 1992). We deny defendants' premature motion to deny class certification.

## CONCLUSION

For the foregoing reasons, Count I is dismissed to the extent it rests on the movers' search of plaintiff's residence. Otherwise, the motion to dismiss Count I is denied. Count II is dismissed. The motion to deny class certification is denied.

James B. Moran

**JAMES B. MORAN**
Senior Judge, U. S. District Court

April 5 , 2005.